UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| **CEDAR CREEK FIBERS, LLC** | 03-00838-8-ATS |
|     **DEBTOR** | |
| | |
| **SHAWNA Y. STATON, TRUSTEE** | ADVERSARY PROCEEDING NO. |
|     Plaintiff | S-05-00128-8-AP |
|     v. | |
| **FIBER INDUSTRIES, INC., WELLMAN, INC., CELANESE CORPORATION, CELANESE FIBERS, INC., HOECHST CELANESE CORPORATION, CNA HOLDINGS, INC., MONSANTO COMPANY** | |
|     Defendants. | |

**ORDER ALLOWING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

The matter before the court is the motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure, filed by defendants Celanese Corporation, Celanese Fibers, Inc., Hoechst Celanese Corporation and CNA Holdings, Inc. (collectively, "Celanese"). A hearing took place in Raleigh, North Carolina on January 10, 2006.

Cedar Creek Fibers, LLC filed a petition for relief under chapter 7 of the Bankruptcy Code on January 29, 2003, and Shawna Y. Staton was appointed trustee. On July 1, 2005, Ms. Staton filed the instant

adversary proceeding against the defendants, alleging causes of action for violation of the North Carolina Oil Pollution and Hazardous Substances Control Act ("OPHSCA"), negligence, nuisance and trespass. On June 13, 2005, prior to filing the complaint in this court, Ms. Staton filed a motion to extend time to file complaint in the Superior Court of North Carolina in Cumberland County and obtained a summons from that court.  Pursuant to Rule 3(a) of the North Carolina Rules of Civil Procedure, Ms. Staton was allowed an additional 20 days in which to file her complaint.  On January 9, 2006, Ms. Staton filed an amended complaint, which added claims for breach of contract and negligence *res ipsa loquitor*.[1]

    Celanese's motion to dismiss sets forth several bases for dismissal: first, it contends that the North Carolina statute of repose bars all claims.  Second, it contends that the North Carolina statute of limitations bars the OPHSCA and negligence claims.  Finally, Celanese maintains that the plaintiff cannot meet the elements of her claims for negligence, nuisance and trespass as a matter of law.

    For purposes of deciding a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the plaintiff's factual allegations as true, drawing all reasonable inferences in the

---

[1] The parties agree that the motion to dismiss before the court does not address the new claims added by the amended complaint, so that even if the motion is allowed in full, those two claims would remain.

plaintiff's favor. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). Because the rules require only notice pleading, courts construe a plaintiff's allegations liberally. In addition, the court may not consider materials outside the pleadings without converting the motion to one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. See Rule 7012, Fed. R. Bankr. P.

Because the court must construe the facts in the light most favorable to the plaintiff, the facts set forth herein are as alleged in the amended complaint. On June 13, 2002, Cedar Creek Fibers d/b/a Fayetteville Fibers, Inc. purchased a 19-acre lot of commercial property at 3224 Cedar Creek Road in Fayetteville, North Carolina, from Wellman, Inc. d/b/a Fiber Industries, Inc. Wellman purchased the property in 1988 from Celanese Fibers and Hoechst Celanese Corporation.[2] CNA Holdings is the successor by merger of Celanese Corporation, Celanese Fibers, and Hoechst Celanese Corporation.

While Celanese owned the property, it operated a manufacturing facility and maintained underground concrete sumps. Also during its ownership, a plume of groundwater contamination was identified on the site. When Wellman owned the property, a release of Tetrachloroethene to soil and groundwater originating from a chemical sewer sump was discovered at the facility. The release resulted in contaminating the

---

[2] This allegation appears in the complaint, but was not restated in the amended complaint. The court does not believe that this allegation is contested.

groundwater with perchloroethylene and its associated degradation products, trichloroethene (TCE), dichloroethenes (DCEs), and vinyl chloride in violation of the North Carolina groundwater quality standards.  The history of the property is replete with on-going transactional relationships between all defendants, including a contractual relationship with regard to ownership and operation between Fiber Industries and/or Wellman and Celanese during the process of transferring the property to and from Celanese.

Cedar Creek Fibers purchased the property in 2002 with the understanding that Wellman would remediate the known contamination on the site.  The property has not been remediated and contamination remains.  The tax value of the property in 2002 was $5,170,633, but after a year of extensive marketing efforts, the trustee was able to sell the property in 2004 for only $580,000.  The trustee brought this action to recover the devaluation of the property.

**Statute of Repose**

Celanese contends that all of the trustee's claims must fail under North Carolina's 10-year statute of repose, North Carolina General Statute § 1-52(16).  That statute provides, in relevant part, that "no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action." Celanese contends its last act occurred on January 25, 1988, when it

sold the property to Wellman, while the complaint was not filed until July 1, 2005.

The trustee contends that although Celanese may have sold the property in 1988, its relationship to Wellman and Fiber Industries resulted in continuing contacts with, and possibly ownership or operation of, the property. While the allegations of ownership and operation may not have been artfully drafted, they are sufficient to withstand a motion to dismiss. The trustee has established that Celanese may have had a continuing relationship with the property between 1988 and 2002 that could result in liability for the environmental contamination. It is possible that these allegations will not be supported by evidence after the parties have engaged in discovery, but for purposes of a Rule 12(b)(6) motion, the trustee has sufficiently alleged an act or omission by Celanese within 10 years prior to the filing of the complaint. Accordingly, the motion to dismiss all counts under the statute of repose will be denied.

**Statute of Limitations**

Celanese next contends that the OPHSCA and negligence claims must be dismissed because they were not filed within the 3-year statutes of limitations set forth in North Carolina General Statutes §§ 1-52(2) and 1-52(5), respectively. The statutes of limitations for both OPHSCA and negligence claims begin to run when the plaintiff knew or had reason to know that the property was contaminated. Cedar Creek Fibers was aware

of the contamination when it purchased the property on June 13, 2002.[3] Thus, the limitations period began to run on that date, and expired on June 13, 2005.

The plaintiff initially filed an action in the Superior Court of North Carolina in Cumberland County, following the North Carolina Rules of Civil Procedure.  Rule 3(a) of the North Carolina rules provides for the filing of a motion to extend the time to file a complaint for 20 days.  If the motion is allowed, the summons issued, and the complaint filed within the 20-day period, then a plaintiff has initiated an action effective on the date the summons was issued and the motion to extend time was filed and allowed.  The complaint was filed within 20 days, though it was filed with this court and not in the state court where the action was initiated.

Section 1334 of Title 28, United States Code, provides that the federal district courts have original, but not exclusive jurisdiction over civil proceedings arising under title 11, or arising in or related to cases under title 11.  28 U.S.C. § 1334(b).  Because jurisdiction also lies with the state courts for such proceedings, it would have been permissible for the trustee to file this action in the state court.  She did initiate this proceeding in the North Carolina courts,

---

[3] The amended complaint alleges that "Cedar Creek Fibers purchase[d] subject property with the understanding that Wellman . . . would remediate the known contamination . . . ."  Amended Complaint at ¶ 28.

6

following North Carolina procedural rules.  Under those rules, the trustee's action was filed within the applicable limitations period.  The fact that she then chose to file her complaint in this court, rather than in the state court in which the action was initiated, does not change the fact that the trustee took appropriate steps to extend her filing deadline.  Accordingly, the complaint was filed within three years of the date of the sale, and the causes of action for OPHSCA and negligence are not barred by the applicable statutes of limitations.

**Negligence**

Celanese contends that the trustee's negligence claim must be dismissed because there is no duty of care owed by a former owner of property to a future owner.  The plaintiff contends that because it alleged the elements of negligence, including the duty of care, the defendants' arguments are outside the scope of a Rule 12(b)(6) motion.  This argument misses the essence of Rule 12(b)(6); that is, if the facts alleged do not give rise to a claim under the law, the claim must be dismissed.  The trustee has not alleged any facts to establish a basis for a duty owed from Celanese to the trustee other than as a prior property owner.  Even if the allegations about a continuing relationship with Wellman and Fiber Industries are true, Wellman and Fiber Industries' relationship to the trustee is also as prior property owners.

The plaintiff has cited to no case law in which a prior property owner is held to owe a duty of care to a subsequent property owner. The defendants, however, have provided substantial authority to the contrary. See Stanford v. Owens, 46 N.C. App. 388, 265 S.E. 2d 617 (1980) (affirming dismissal of negligence claim where no duty owed to subsequent landowner at time of alleged negligent acts); Wellesley Hills Realty Trust v. Mobil Oil Corp., 747 F. Supp. 93, 100 (D. Mass. 1990) (dismissing negligence claim based on alleged duty, owed to subsequent owners of property, to properly dispose of hazardous wastes); Triffler v. Hopf, 1994 U.S. Dist. LEXIS 16158, *34 (N.D. Ill. 1994) (granting summary judgment in favor of defendants, finding "no legal authority that would support 'the imposition of a duty on an owner of land to maintain his or her property in a certain condition or to refrain from any activity affecting the property which would extend to future owners of the land'") (citations omitted); Ameritrust Co. Nat'l Assoc. v. The Lamson & Sessions Co., 1992 U.S. Dist. LEXIS 22647, *13 (D. Ohio 1992) (allowing motion to dismiss negligence claim, finding "no authority for the proposition that a landowner who engages in hazardous waste disposal on his property owes a duty to subsequent owners of the property"). The court is not willing to create new law imposing a duty of care that has never before existed in North Carolina common law (or the common law of any other state), and concludes that

there is no duty of care owed by the defendants, as prior landowners, to the plaintiff.

The trustee also suggests that the duties arising from OPHSCA somehow create a duty of care under a traditional negligence analysis. OPHSCA is a strict liability statute, and "North Carolina courts proceed with great caution before permitting a strict liability statute to operate as negligence per se." Rudd v. Electrolux Corp., 982 F. Supp. 355, 366 (M.D.N.C. 1997)(citing Hurley v. Miller, 113 N.C. App. 658, 666-667, 440 S.E. 2d 286, 291 (1994)). While the plaintiff has not alleged negligence per se, the elements of negligence per se are similar in nature to those of simple negligence, except that in negligence per se, the breach of a statutory duty is, in certain circumstances, sufficient to prove negligence as well. In negligence per se, the duty of care is created by the statute or ordinance as opposed to the common law. Certainly if courts are reluctant to extend the duties imposed by a strict liability statute to operate as negligence per se, the same care should be applied in extending those statutes to create a duty of care for simple negligence. This court declines to extend the duties imposed by OPHSCA to create a duty of care under common law negligence.

Finally, even if the plaintiff could establish a duty of care owed by the defendants, at least one court in this district has held that plaintiffs may not recover damages for negligence for the diminution in

value of their land.  See Grant v. E.I. Du Pont De Nemours and Co., Inc., 1995 U.S. Dist. LEXIS 15345, *23 (E.D.N.C. 1995)(citing Zopfi v. City of Wilmington, 273 N.C. 430, 160 S.E.2d 325 (1968)).  The plaintiff has alleged damages only with respect to the decreased value in the property, and thus there are no sustainable damages to support the negligence claim.  Because the court finds that there is no duty of care owed by the defendants to the plaintiff and that the plaintiff cannot prove recoverable damages, the negligence claim will be dismissed.

**Nuisance**

The plaintiff alleged that the contamination of the soil, surface water and groundwater on the Cedar Creek Property with hazardous substances constitutes an unreasonable and substantial invasion of Cedar Creek's use and enjoyment of their property, in that it was no longer able to use and enjoy the property for the same purposes and to the same extent as it could prior to the contamination caused by the defendants.[4]  Thus, the plaintiff alleges, the contamination constitutes a permanent nuisance that has resulted in injuries and damages to the property.  Again, the only damage alleged by the plaintiff is

---

[4] The phrasing of this allegation is curious, given that Cedar Creek did not own the property, nor would it have been able to use and enjoy the property, prior to the alleged contamination.

10

diminished property value, which the defendants contend is not recoverable in an action for nuisance.

"It is well settled that a reduction in property value, standing alone, cannot give rise to an action for nuisance per accidens." Grant, 1995 U.S. Dist. LEXIS 15345, *17 (citing Zopfi, 273 N.C. 430, 160 S.E.2d 325, 330 (1968); Twitty v. State, 85 N.C. App. 42, 54, 354 S.E. 2d 296, 304 (1987)). The plaintiff's own cases show that

> proof of interference requires proof of substantial annoyance, material physical discomfort, or injury to the health or property of the adjoining landowner. (Citations omitted) . . . . The anticipated injuries must be more than conjectural and amount to actual interference with her use and enjoyment of the property. *Mere diminution in market value will not suffice.*

Rudd, 982 F. Supp. 355, 369 (citations omitted) (emphasis added). Because the plaintiff has not alleged any damages other than diminished market value, the cause of action for nuisance must be dismissed.[5]

In addition, it is doubtful North Carolina courts would sustain an action for nuisance against a prior landowner. Nuisance is recognized as interference with the property of an *adjoining* landowner. See Rudd, 982 F. Supp. at 368 ("a nuisance is the improper use of one's own property in a way which injures the land or other right of one's

---

[5] Plaintiffs may recover the depreciation in market value in cases of permanent nuisance only where eminent domain is involved or where the landowner and the defendant both consent to that remedy. Rudd, 982 F. Supp. at 371. Where there is no consent, the landowner's remedy lies in abatement. Id.

11

neighbor."). Other courts have specifically rejected nuisance claims in this context. See Philadelphia Electric Co. v. Hercules, Inc., 762 F.2d 303, 313 (3rd Cir. 1985)(finding no cases permitting "a purchaser of real property to recover from a seller on a private nuisance theory for conditions existing on the very land transferred"); Triffler, 1994 U.S. Dist. LEXIS 16158, *24 (following Hercules and noting that not one court "has found that a nuisance claim can be properly maintained against prior owners or occupiers of land").

Because the plaintiff cannot show recoverable damages or a proper claim for nuisance against Celanese, the nuisance claim will be dismissed.

**Trespass**

The plaintiff alleges in her amended complaint that the ongoing or continuing contamination of the property with hazardous substances constitutes unauthorized and unlawful entries on the property, constituting a renewing trespass on the property. This claim must fail for the same reason the negligence and nuisance claims must fail: there is no sustainable action for trespass against a prior landowner. The Triffler court considered the Restatement (Second) of Torts definition of "continuing trespass," "the actor's failure to remove from land in the possession of another a thing which he has tortiously . . . placed on the land . . . ." Triffler, 1994 U.S. Dist. LEXIS 16158, * 23 (citing Restatement (Second) of Torts, § 161). The court concluded

12

that "[a] prior land owner can simply not be held liable under a theory of continuing trespass for items he left on his own property. Nor, can it properly be said that Exxon or the other defendants acted 'tortiously' by either introducing or failing to remove the allegedly leaking tanks." Triffler at 23. Other courts have reached the same conclusion. See Moore v. Texaco, Inc., 244 F.3d 1229, 1233 (10th Cir. 2001); Patton v. TPI Petroleum, Inc., 356 F. Supp. 2d 921, 930-31 (E.D. Ark. 2005); Lilly Indus., Inc. v. Health-Chem Corp., 974 F. Supp. 702 (S.D. Ind. 1997).

In a slightly different context, the Rudd court determined that where the trespass is initiated from a neighboring property, a prior owner of the neighboring property does not have liability to a third party for trespass. Instead, it is the "current property owner's responsibility to clean up the contamination in order to stop the trespass. Under the common law, liability, if any, falls entirely on the current property owner." Rudd, 982 F. Supp. at 371. The Rudd court further found that "[w]hile there is no North Carolina case on point, it is believed that the North Carolina Supreme Court would apply these same common law principles." 982 F. Supp. at 371.

Based on these principles, the court agrees that no action lies against Celanese for trespass, and the claim for trespass will be dismissed.

**CONCLUSION**

Based on the foregoing, the defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure) is **DENIED** to the extent the defendants contend that the complaint is barred by the statute of repose and statutes of limitations, and **ALLOWED** as to the claims for negligence, nuisance and trespass.  As agreed by the parties, this order does not address the claims for breach of contract or negligence *res ipsa loquitor*.  Those claims, as well as the

plaintiff's claim for strict liability under OPHSCA, remain for further proceedings.

**SO ORDERED.**

DATED:   January 24, 2006

A. Thomas Small
United States Bankruptcy Judge